**AULTMAN et al. v. UNION CITY TRANS-FER et al.**

**No. 1673.**

Court of Appeal of Louisiana. First Circuit.

Feb. 12, 1937.

Robert R. Stone, of Lake Charles, for appellant.

Pujo, Bell & Hardin, of Lake Charles, for appellees.

LE BLANC, Judge.

Plaintiff, Mrs. Ruth Aultman, appeals herein from a judgment in the district court which rejected a claim presented on her own behalf as well as one on behalf of her minor child, Roy William Aultman, as his natural tutrix, against the defendants, Union City Transfer, that being the trade-name of a partnership whose members are domiciled in the city of Beaumont, Tex., but who conduct a general motor transfer business and maintain an office in the city of Lake Charles, and the Employers Casualty Company which carried the partnership's public liability insurance, for damages arising out of the death of her husband, Orrin L. Aultman, the father of her minor child, which occurred during the early morning hours of January 24, 1935, when the Ford V–8 automobile which he was driving ran into the rear end of a large truck and trailer belonging to the defendant Union City Transfer, on East Broad street which leads into Lake Charles from the east.

The claim is predicated on the alleged negligence of the defendant Union City Transfer through the acts of the driver of its truck in (1) attempting to turn a large truck with a platform trailer, the whole said to measure from 33 to 35 feet in length, in the middle of a city block, contrary to the city ordinances on the subject, thus blocking the street; (2) in making no attempt to observe, and if he did observe, in not appreciating how near the approaching car which ran into the truck was, when he started to make his turn; and (3) in failing to appreciate the invisibility of the truck by reason of the construction of the trailer, by an automobile driver approaching it from the rear until such automobile was too close to avoid running into it.

The defendants filed a joint answer in which the acts of negligence charged against the truck driver are denied, and in which also it is specifically alleged that the truck and trailer were being operated in a safe and prudent manner; that the head and tail lights were burning brightly and were visible to all approaching traffic from either direction. It is further alleged that while the truck driver was on the west (his proper) side of the road, on observing that the Ford car was approaching from the rear at a highly reckless and dangerous rate of speed and was turning to its right, evidently intending to try and pass the truck on the wrong side, and on appreciating the danger of a collision, he turned his truck to the left in an effort to give him room to pass to his right, but because of the excessive speed at which it was going, it ran into the rear end of the trailer. It is also alleged that the truck was equipped with rear-end lights visible for several hundred feet, and had the driver of the Ford car been keeping a proper lookout, he should have observed it in time to avoid the collision. Because of these facts, as alleged by them, the defendants plead contributory negligence and aver, in the alternative, that even though the driver of the truck had been guilty of negligence to any extent, Mr. Aultman, husband of the plaintiff, was guilty of contributory negligence which bars her right as well as that of her minor son to recover damages for his death.

The district judge handed down written reasons for judgment in which he found that the truck driver had been negligent in having practically blocked the highway with this long truck and trailer, but, as he also found that they were equipped with side clearance lights and a taillight which were burning at the time, and as the decedent's car was also equipped with good headlights which were burning, he should

have seen the truck in ample time to have avoided the accident. This, he held, constituted contributory negligence on his part which stood as a bar to his widow's and minor son's recovery.

To arrive at this conclusion, the learned district judge had to discard entirely the testimony of the driver of the truck and his companion who was driving another of the defendant's trucks at the time and which was parked on the highway, several feet east of the point where the collision took place. These were the only two eyewitnesses to the accident. Strange to say, counsel for plaintiff disputes their testimony also, and yet under our view of the case, it is mostly on the account they give as to how the accident happened that we hold the decedent free of contributory negligence and the defendants liable in damages to the plaintiff.

The defendant Union City Transfer, as we have said, operates a motor freight transportation business out of Beaumont, Tex., with a place of business also in Lake Charles. On the night of the accident. two trucks had come in from Beaumont, reaching Lake Charles somewhat at a late hour. They were inspected and sent out again with a change of drivers. A man by the name of Preston Heard drove one and Wilton Buller drove the one which became involved in the accident with Mr. Aultman.

The trucks with the trailers measured 33 feet in length. The trailers were what might be called platform trailers, as they consisted merely of boards about three inches thick laid across the bolsters about four feet from the ground. They were coupled to the truck by means of a pipe, about four inches in diameter, with a king-pin. This pipe, which served as a coupling pole, extended several inches beyond the rear end of the trailer. The truck which Heard was driving was loaded, and that driven by Buller had only a crated coil or spool of cable aboard, placed just about the middle bolster of the trailer.

When they left Lake Charles, they proceeded east on East Broad street which leads out on highway No. 90. When they were still within the city limits, Heard, who was in the lead, blinked the lights of his truck which was a signal for Buller who was following, to stop. They both pulled up on the north side of the highway and stopped their respective trucks. This, according to the testimony, was about 1:30 in the morning. Heard's purpose in stopping Buller was to send him back to Lake Charles, as the latter's truck was the more lightly loaded, to get his coveralls, he intending to wait for him where his truck was parked.

Up to this point there is and could hardly be any dispute, as there was no one else on the highway at the time who might have testified differently. From then on there is conflict in the testimony as to what really occurred.

Plaintiff called as witnesses several parties, most of them negroes, who lived along the highway, on the north side. All of them except one were awakened by the noise of the collision, and could not, in our opinion, testify with any degree of certainty as to what transpired before the accident took place. Two of these witnesses testified regarding certain statements Buller is said to have made after it had happened, to the effect that he was backing his truck in the highway, no doubt in attempting to make the turn, from which it is deduced that the truck and trailer were diagonally across the road, covering nearly the whole paved portion on account of their length, as the Aultman car was approaching from the east. Only one of these witnesses, a woman by the name of Suzie Vilce, claims to have seen the truck in a backing movement before the collision. She says that she had gone to bed, but was expecting her son home that night, and when she heard noise on the highway, she got up thinking it was he. But on finding out that it was not, she got back into her bed and had hardly done so when she heard the impact between the car and the truck.

If it were so that the truck and trailer were spread diagonally across the whole paved portion of the highway, with the front end headed southwest, it is clear then that with the side clearance lights which were on the left side, and necessarily at that moment faced the east, that the whole presented an object with lights on it which the driver of a car approaching from the east was bound to have seen. The theory that he could not have seen the trailer because of its form of construction could not be applied because he would not have been looking at it from the rear. Under such facts, there would be justification in holding the driver of the car which ran into the truck guilty of contributory negligence.

But that was not the position of the truck and trailer at the time of the impact, according to the testimony of Heard and Buller, the sole eyewitnesses to the accident itself, and it could hardly have been, since the hardest part of the blow seems to have been almost in the center of the rear end of the trailer, the testimony showing that the four-inch pipe coupling pole left its imprint on the left front door of the Ford automobile.

These two witnesses testify that after Buller had been told by Heard to go get his coveralls, he drove his truck past Heard's and went further up the highway to make the turn in a road alongside a cemetery, and that it was after he had made the turn and come back to where Heard's truck was, that he stopped on the north side of the paved road some fifty feet west of the other truck. The manner in which Buller made the turn is the point on which there is conflict and we do not believe that that makes any material difference. Inasmuch as there appears no reason why the testimony of these, the only eyewitnesses, should be rejected, we have decided to accept it as showing the manner in which the accident occurred. Unfortunately for the defendants, this testimony of their own witnesses not only points clearly to their own negligence, but in our opinion it also liberates the deceased husband of the plaintiff from the plea of contributory negligence.

After Buller had turned his truck around he asked Heard where his coveralls were. Heard then left the cab of his truck and walked across the highway to Buller's and immediately after telling him where they were, he saw the Aultman car coming at what he says was a "pretty fast" rate of speed. He evidently was in close quarters because he says that as the car continued approaching and he saw that he was in danger of being run over, he started to wave it down and as he did so, he darted across the highway to the south side. At that moment, seeing that the car was swerving to its right, he shouted to Buller, to "step on it." Buller, in an effort to avoid being run into from the rear, pulled over fast to his left, but it was too late. The Ford ran into the trailer of his truck with the disastrous result we know of.

Buller's testimony is almost to the same effect as Heard's except that he is not sure that he saw the latter waving his hands and he did not hear him shout to him to "step on it." He does state, however, that through his rear vision mirror he could see the Aultman car coming, and as it looked as though it was headed right for the rear end of his trailer, he pulled over to his left as hard as he could. "I was trying to get out of his way, to protect myself," he says, "because I didn't want him to hit me straight in the back and probably throw that spool of cable on me and break me up some way or kill me."

Now, both Buller and Heard testify that there was ample room left on the highway on the south side, to the left of Buller's truck, for the Aultman car to have passed in safety. As a matter of fact, they say that had the two trucks been opposite each other, there would have been enough room. How much more there was, therefore, when they were some 50 feet from each other. Such being the situation, there was no reason, as we can see, why Aultman should not have continued on and passed by the Buller truck, and in our opinion, that was what he intended doing until the situation was suddenly changed, and by the action of these two men, became one of imminent peril which caused him to change his course, in a last desperate effort to avoid an accident. Heard's waving of his hands, if he did wave them as some form of signal, came too late, and if it be assumed that he did not wave them, his mere presence on the highway, appearing suddenly in front of Aultman, was enough to confront the latter with the extreme danger in continuing straight ahead and trying to pass the truck on his left. The action of Buller at that moment, in pulling his truck over to the left, aggravated the situation and made it one in which it became impossible for Aultman to avoid running into him. In his attempt to do so, he evidently lost control of his car, as it appears to have left the highway, to have run into the ditch along the north side and then regained the highway, when it ran into the trailer.

■ There is a well-recognized rule in the law governing the driving and operation of automobiles, that a person who finds himself presented with a sudden emergency or a situation of peril, created by another, will be absolved from negligence, if, in attempting to extricate himself, he chooses a course which, it later turns out, would not have been the safest one for him to follow. The rule is based on another

principle, that in such a situation, a person is not to be held to the same exercise of judgment as one who sees the danger in time to take necessary precautions to avoid it. The "Emergency Rule," as it is sometimes called, is thus expressed in the recent publication, 5 American Jurisprudence, 600, § 171: "An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency. Nor, if he so acts under the circumstances, is he guilty of contributory negligence, at least, negligence or contributory negligence on his part cannot be found as a matter of law. * * *"

Under the facts, as we find them, the rule is applicable to this case. Plaintiff's deceased husband cannot be held guilty of contributory negligence, and therefore she is entitled to recover on her own behalf and that of her minor child, for the damages arising out of his death.

The matter of assessing damages resolves itself into the question of what amount a widow and minor child are entitled to receive for the death of a husband and father who was 26 years old, with a life expectancy of 38 years, and whose net earnings at the time of his death averaged about $140 per month. The damages claimed were all for loss of support, loss of companionship, and for pain and suffering. The sum of $12,500 was asked on behalf of each. In his brief, their counsel apparently concedes that that is considerably more than is usually allowed in similar cases. There is no doubt that it is far more. We believe that an award of $6,000 on behalf of each would be more in conformity with the current jurisprudence and have decided to fix it at that sum.

For the reasons stated, it is ordered that the judgment appealed from be reversed and set aside, and that there now be judgment in favor of the plaintiff, Mrs. Ruth H. Aultman, individually and also as natural tutrix of her minor child, Roy William Aultman, and against the defendant partnership, Union City Transfer, composed of H. Vallee and Son, and the individual members thereof, and against the defendant Employers Casualty Company, condemning said defendants to pay, in solido, unto the said plaintiff, the sum of $6,000 in her own behalf; and also the sum of $6,000 as natural tutrix, in behalf of her minor son, Roy William Aultman, with legal interest from judicial demand, and all costs of these proceedings.